# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY G. MALONEY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FORTERRA, INC., JEFFREY BRADLEY, WILLIAM MATTHEW BROWN, LORI M. BROWNE, KYLE S. VOLLUZ, KEVIN BARNER, ROBERT CORCORAN, SAMUEL D. LOUGHLIN, CLINT MCDONNOUGH, JOHN MCPHERSON, CHRIS MEYER, JACQUES SARRAZIN, CHADWICK SUSS, GRANT WILBECK, GOLDMAN, SACHS & CO., CITIGROUP GLOBAL MARKETS INC., and CREDIT SUISSE SECURITIES (USA) LLC, <br><br> Defendants. | Case No.: 1:17-CV-5662 <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Nancy G. Maloney ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by Forterra, Inc. ("Forterra" or the "Company") and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on Forterra's website concerning the Company's public statements; and (d) review of other publicly available information concerning Forterra.

## I.  NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons or entities that purchased or otherwise acquired: (1) Forterra common stock issued pursuant and/or traceable to the Company's false and misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with Forterra's October 19, 2016 initial public stock offering (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"); and (2) Forterra common stock between October 20, 2016 and August 9, 2017 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Forterra manufactures pipe and precast products in the U.S. and Eastern Canada for water-related infrastructure applications, including water transmission, distribution and drainage.  The Company claims to provide infrastructure components for construction projects in residential, non-residential, and infrastructure markets.

1

3.     On or around October 19, 2016, the Company priced its IPO of 18,420,000 shares at a price of $18.00 per share.

4.     On October 21, 2016, the Company filed its IPO prospectus with the SEC. Therein, the Company claimed that its organic growth strategy was focused on leveraging its low-cost operations, high level of customer service and product innovation capabilities, and its product breadth and industry-leading scale, to cross-sell its products to existing customers to increase penetration and project wins and to gain market share through new customers.  The Company also claimed that it had "built a strong operating platform" and that it was continuously evaluating acquisition opportunities "to complement [its] organic growth."

5.     On March 30, 2017, during the Company's fourth quarter 2016 conference call, Defendant Jeffrey Bradley, the Chief Executive Officer ("CEO") of Forterra, discussed "key top-line organic growth initiatives" that the Company purportedly put in place in 2016.  The initiatives included the creation of a "strategic accounts team that focuses on developing and expanding [Forterra's] relationships with large national engineering procurement and construction firms," a "cross-selling initiative that is focused on expanding the sales of [the Company's] drainage pipe and products to distributors in areas of the country where [Forterra] did not have a strong presence," and significantly growing Forterra's Bio Clean business.

6.     On May 15, 2017, the Company issued a press release disclosing that it produced no organic growth for the first quarter of 2017.  Specifically, the Company stated that net sales for the quarter increased to $338.3 million, compared to $187.0 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that increased net sales by $163.0 million.  The Company further stated that it was continuing to work on its previously announced initiatives to improve income from operations, and that the Company expects the

initiatives to require significant investment, including professional fees.  The Company also stated that it expects some of the benefits of the initiatives to begin to contribute to improved performance starting in the second half of 2017.

7.     On this news, the Company's stock price fell $4.79 per share, or 24.2%, to close at $14.93 per share on May 15, 2017, on unusually heavy trading volume.

8.     On August 10, 2017, the Company again issued a press release disclosing that it produced no organic growth, this time for the second quarter of 2017.  Specifically, the Company stated that net sales for the quarter increased to $436.7 million, compared to $381.7 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that contributed $56.1 million to net sales.  The Company claimed that net sales were negatively impacted by Tropical Storm Cindy, excessive rainfall events around the country, unanticipated competitive pricing pressure in certain areas, and a decline in average sales prices of products sold.

9.     On this news, Forterra's stock price fell approximately 57%, on August 10, 2017, on unusually heavy trading volume.

10.     As further detailed below, throughout the Class Period, Defendants made false and/or misleading statements, and/or failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) at the time of the IPO, organic sales in Forterra's Drainage and Water segments had significantly declined; (ii) the Company was experiencing increased pricing pressure due to competition and continued softness in its concrete and steel pipe business; (iii) Forterra had been losing business in its important pipe and precast business due in large part to operational problems at its production plants; (iv)

3

the Company had undisclosed material weaknesses in its internal controls that prevented it from accurately reporting and forecasting its financial results; and (v) as a result of the foregoing, Forterra's public statements were materially false and misleading at all relevant times. As a result of this fraudulent scheme, Defendants were able to artificially inflate the Company's financials throughout the Class Period.

11.     As a direct result of Defendants' wrongful actions, Forterra's common stock traded at artificially inflated prices throughout the Class Period.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other Class members have suffered significant losses and damages.

## II.     JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5), and Sections 11 and 15 of the Securities Act (15 U.S.C. §§77k and 77o).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. §77v) and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b), Section 22 of the Securities Act (15 U.S.C. §77v) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  A substantial portion of the acts and conduct outlined herein occurred in this District.

16.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

### III.   PARTIES

17.     Plaintiff Nancy G. Maloney, as set forth in the accompanying certification, incorporated by reference herein, purchased Forterra common stock during the Class Period, and suffered damages as a result of the federal securities law violations and the false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Forterra, Inc. is incorporated in Delaware and its headquarters are in Irving, Texas.  Forterra's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "FRTA."

19.     Defendant Jeffrey Bradley ("Bradley") is, and was at the time of the IPO, the Chief Executive Officer ("CEO") of Forterra and a member of its Board of Directors (the "Board").

20.     Defendant William Matthew Brown ("Brown") is, and was at the time of the IPO, an Executive Vice President and the Chief Financial Officer of Forterra.

21.     Defendant Lori M. Browne ("Browne") is, and was at the time of the IPO, a Senior Vice President and the General Counsel of Forterra.

22.     Defendant Kyle S. Volluz ("Volluz") is, and was at the time of the IPO, a member of the Forterra Board.

23.     The defendants named in ¶¶19-22 signed the Registration Statement.

24.     Defendants Kevin Barner, Robert Corcoran, Samuel D. Loughlin, Clint McDonnough, John McPherson, Chris Meyer, Jacques Sarrazin, Chadwick Suss and Grant

Wilbeck were all identified as "Director Nominees" in the Registration Statement. Along with the defendants named in ¶¶19-22, they are referred to herein as the "Individual Defendants."

25.     Defendants Goldman, Sachs & Co. ("Goldman"), Citigroup Global Markets, Inc. ("Citigroup"), and Credit Suisse Securities (USA) LLC ("Credit Suisse") served as underwriters for the Company's IPO.

26.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Forterra's reports to the SEC, as well as its press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, and were the result of the collective actions of the Individual Defendants.

27.     Goldman, Citigroup, and Credit Suisse (collectively, the "Underwriter Defendants"), are investment banking houses that serves as underwriters of the IPO and collectively earned over $18 million in fees. The Underwriter Defendants, through their representatives, marketed Forterra's IPO to potential investors.  As part of their marketing efforts, the Underwriter Defendants arranged a multi-city roadshow prior to the IPO during

which they, and representatives from Forterra, met with potential investors and presented highly favorable information about the Company, its operation, and its financial prospects.

## IV.  SUBSTANTIVE ALLEGATIONS

### A.  Background

28.  Forterra manufactures pipe and precast products in the U.S. and Eastern Canada for water-related infrastructure applications, including water transmission, distribution and drainage.  The Company provides infrastructure components for construction projects in residential, non-residential, and infrastructure markets.

29.  Forterra was previously known as Hanson Building Products, a Texas-based building materials manufacturing company.

30.  In March 2015, Controlling Shareholder Lone Star Fund IX (with its related entities, "Lone Star") purchased the Company from HeidelbergCement AG for $1.4 billion in a highly leveraged buyout.  Prior to selling the Company to Lone Star, HeidelbergCement AG had unsuccessfully attempted to conduct an IPO to raise capital to pay down the Company's already high debt load. Following the acquisition by Lone Star, the acquired businesses that now make up Forterra were operated by Controlling Shareholder LSF9 Concrete Holdings Ltd ("Concrete Holdings"), as a wholly owned subsidiary of Lone Star.

31.  Lone Star is an investment advisory firm that owns multiple other industrial manufacturing companies, including Tote Systems (bulk container equipment, systems & services); Reliant Worldwide Plastics (injection-molded plastic commercial airplane seats); Concrete Related Products (fabricator of reinforcement bar used in concrete construction and concrete product manufacturing); Energy Steel Products, Inc. (stainless steel mill support for oil & gas, aerospace and other industries); Woodlawn Manufacturing (integrated manufacturer of

metal parts for military ammunition and warheads); Continental Electronics (radio frequency transmitters); Alsay Incorporated (municipal and industrial water wells); Yellow Checker Cab Company of DFW (largest cab company in the Dallas-Fort Worth metroplex); Frac Tank Rentals (largest frac tank rental company in Permian Basin); Green Energy Oilfield Services (provider of fluid transportation, storage, disposal and other critical services including frac tank rentals in Texas); State Service Company (engineering, fabrication and construction services to the offshore oil and gas industry); RWI Construction (above-ground services to the oil and gas industry); Teton Buildings, LLC (remote workforce accommodations for oil, gas, mining industries); Trinity Forge (closed-die forgings and machined parts); and Inter-American Oil Works (manufacturer of equipment for oil and gas drilling rigs).

32.     In February 2016, Lone Star changed Concrete Holdings' name to Forterra.

33.     Forterra's remaining operations are the manufacturer of pipe and precast products in the U.S. and Eastern Canada for a variety of water-related infrastructure applications, including water transmission, distribution and drainage. The Company operates 96 manufacturing facilities located across North America that design, manufacture, and distribute products used in infrastructure projects serving both residential and nonresidential markets.

34.     Forterra has two reporting segments, each responsible for approximately half of its revenues: Drainage Pipe and Water Pipe. Drainage is driven by waste-water and storm-water infrastructure, highway infrastructure construction, and residential housing starts. Water Pipe sales are driven by residential housing starts, and public spending on water supply construction and municipal infrastructure.

35.    By end market, Forterra generates the largest portion of revenue from U.S. residential markets (35%), followed by U.S. infrastructure (30%) and U.S. commercial (23%). Approximately 9% of revenues are generated outside of the U.S. (largely in Canada).

36.    In April 2016, Lone Star took the former combined company's UK operations public as a separate company, Forterra UK, in which Lone Star retains majority-ownership. Forterra has no relation with Forterra UK other than Lone Star's majority ownership of both companies.

37.    After acquiring the Company, Lone Star caused Forterra to make a series of acquisitions, including acquiring:

- USP Holdings Inc. (or "U.S. Pipe") in April 2015 for $775 million (operates in the water segment);

- Cretex Concrete Products, Inc. in October 2015 for $245 million (operates in the drainage segment);

- Sherman-Dixie Concrete Industries, Inc. in January 2016 for $67 million (operates in the drainage segment);

- Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc., (together "Bio Clean") in August 2016 for $30 million (operates in the drainage segment);

- J&G Concrete Operations LLC in October 2016 for $32 million (operates in the drainage segment); and

- Precast Concepts LLC in October 2016 for $97.1 million (operates in the drainage segment).

38.    In order to make all of these acquisitions, Lone Star loaded the Company with even more debt prior to its IPO.  As of June 2016, Forterra had approximately $1.2 billion of long-term debt—more than triple the amount it had carried just 21 months prior when Lone Star acquired it from HeidelbergCement AG. The Company was far more highly leveraged than any

of its competitors and the Registration Statement expressly stated that the funds raised in the IPO were being used to pay down its debt.

39.     On or about July 8, 2016, Forterra filed with the SEC a Registration Statement on Form S-1, which would later be utilized for the IPO following several amendments made in response to comments received from the SEC.

**B.     Defendants' Materially False and Misleading Statements**

40.     On October 19, 2016, the SEC declared the Registration Statement effective. On or about October 21, 2016, Forterra and the Underwriter Defendants filed the final Prospectus for the IPO, which forms part of the Registration Statement.

41.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

42.     The Registration Statement positively described the then-current state of Forterra management's capabilities and proficiency without disclosing that the Company's Chief Operating Officer and various other senior management executives had recently resigned. The Registration Statement stated in pertinent part as follows:

> Since being acquired from HeidelbergCement AG in 2015, we have undergone a significant transformation to become a leading water infrastructure company throughout the United States and Eastern Canada. As part of this transformation, we have:
>
> - ***Upgraded our senior leadership team***, including a new CEO and CFO, both of whom have relevant public company leadership experience and manufacturing industry expertise
>
> - Rebranded our business to "Forterra" to strengthen and unify our corporate identity

- ***Strengthened corporate functions to operate as a fully autonomous, standalone company***

- Implemented incentive compensation arrangements at the sales level to drive profitable growth and instill a strong performance culture

- Launched numerous operational, commercial and cost savings initiatives throughout our businesses, targeting efficiency and profitability improvements ***from which we believe we have realized more than $21 million of year to date savings as of August 31, 2016 and will realize further substantial efficiencies***

- ***Executed our strategic acquisition*** strategy to build geographic scale and significantly enhance our extensive product offering with the acquisitions of Cretex Concrete Products, Inc., or Cretex, Sherman-Dixie Concrete Industries, Inc., or Sherman-Dixie, USP Holdings Inc., or U.S. Pipe, an industry leader in DIP manufacturing and sales, and Bio Clean Environmental Services, Inc. and Modular Wetland Systems, Inc., or together Bio Clean

- ***Streamlined our product portfolio*** and refocused our efforts and resources on water infrastructure with strategic transactions, including the divestiture of our bricks and roof tile businesses

***

- ***Experienced Management Team with Proven Ability to Grow Businesses and Integrate Acquisitions***. Our management team, led by Jeff Bradley, our Chief Executive Officer, has ***a proven track record of increasing shareholder value and generating profitable growth, attractive margins and cash flow.*** Mr. Bradley and other key executives, including Matt Brown, the Chief Financial Officer, have relevant history managing public companies, as well as extensive experience in the manufacturing industry. Our management team has proven their ability to execute on our acquisition strategy, ***leading us in growth through three substantive acquisitions that almost doubled our 2015 historical net sales*** . . . on a pro forma basis. ***Further, Mr. Bradley and his team are continuing to execute a comprehensive program to drive commercial, operational and procurement excellence, as well as managing working capital to increase free cash flow.***

43.     The Registration Statement stated that Forterra's "organic growth strategy [was] focused on leveraging [its] ***low-cost operations, high level of customer service and product innovation capabilities***, as well as [its] product breadth and industry-leading scale, ***to***

11

*cross-sell [its] products to existing customers to increase penetration and project wins and to gain market share through new customers."*

44.    The Registration Statement stated that Forterra's "extensive product offering create[d] *a compelling value proposition for [its] customers* as it eliminate[d] the need to engage multiple suppliers of stormwater and wastewater-related products for a single project, *thereby maximizing efficiency and allowing our customers to meet more aggressive timetables*," and also stated that Forterra had "the ability to custom-build products to complex specifications and regulations, *further enhancing [its] ability to address customer needs*."

45.    Similarly, the Registration Statement positively described Forterra's purported "expansive distribution network [that] *allow[ed it] to achieve lead times among the shortest in the industry*" and stated that Forterra's "drainage offering create[d] a *compelling value proposition for customers* by eliminating the need to seek multiple bids for a single project, *helping maximize efficiency for time sensitive orders."*

46.    Concerning the Company's "Competitive Strengths," the Registration Statement stated that Forterra's "geographic footprint enable[d] [it] to win more large business projects than [its] local or regional competitors, as [it could] provide services to contractors and distributors across geographies and product categories."

47.    Concerning the Company's product sourcing, the Registration Statement emphasized that "due to [Forterra's] scale, [the Company had] purchasing power with suppliers, which reduce[d] our operating costs and enhance[d] [its] ability to win business in competitive bidding processes."

48.    Addressing the Company's then-present business metrics and financial prospects, the Registration Statement emphasized the Company's "*Attractive and Expanding*

*Margins* and Strong Cash Flow Profile." The Registration Statement stated, in pertinent part, as follows:

> Due to our increasing scale, **cost cutting initiatives** and our work toward integrating acquisitions, **we have generated attractive and increasing margins**, capitalizing on our **low-cost operations** and operating leverage. Our regional and local sales force, strategically located manufacturing facilities and broad distribution network allow us to serve our customers across the United States and Eastern Canada **at a competitive cost with efficient procurement and operations**. We expect to further increase our scale through acquisitions and, as a result, we expect to continue to generate purchasing power, operating leverage and cost saving opportunities. **Furthermore, we have an ongoing strategy of implementing cost-cutting initiatives at our production plants.** As of August 31, 2016, we have recognized year to date savings of more than $10 million, $9 million and $1 million from procurement, operational and commercial initiatives, respectively. **We continue to roll out cost and productivity improvements at new sites and have identified new cost reduction opportunities in resale items, transportation, logistics and energy.** Additionally, we have **increased our margins** and cash flow through operational improvement of acquired businesses.

49. Likewise, elsewhere the Registration Statement listed the Company's ability to "Enhance Margins, Free Cash Flow and Returns Through Operational and Commercial Excellence" as a "Business Strategy." The Registration Statement stated, in pertinent part, as follows:

> **We expect to continue growing our margins through ongoing operational, commercial and cultural initiatives.** We are working to leverage our information technology and financial systems to lower costs and implement systematic pricing across our business. We will continue to manage working capital and seek scale-driven procurement efficiency improvements through centralized purchasing and fixed overhead control and reduction.

50. The Registration Statement stated that Forterra's "success in acquiring businesses ha[d] been the result of [its] highly disciplined acquisition strategy, continuous monitoring of potential targets in an opportunity-rich landscape **and focus on culture and people, among other things**," that the Company had "**successfully achieved meaningful cost and**

13

*revenue synergies through the implementation of best practices and operational improvement initiatives in the acquired businesses."*

51.     Elsewhere, discussing Forterra's "Business Strategy," the Registration Statement emphasized that Forterra's "scale enable[d] [it] to be ***among the industry's lowest cost producers."***

52.     Addressing how Forterra planned to "Leverage [Its] Commitment to Product Innovation and Technical Expertise to Optimize Product Mix and Capitalize on Market Opportunities," the Registration Statement claimed that Forterra's "technical salesforce also ***proactively reache[d] out to [its] customers on a regular basis to ensure that [its] customers [were] satisfied and [its]products adhere[d] to project specifications."***

53.     On March 29, 2017, the Company issued a press release entitled "Forterra Announces Its Fourth Quarter and Full Year 2016 Results."  Therein, the Company, in relevant part, stated:

### *Fourth Quarter 2016 Highlights*

- Net sales increased to $354.1 million
- Gross margin expanded to 17.0%
- Net loss increased to $48.7 million
- Adjusted EBITDA increased to $42.6 million
- Adjusted EBITDA Margin expanded to 12.0%

### *Full Year 2016 Highlights*

- Net sales increased to $1,364.0 million • Gross margin expanded to 20.6%
- Net loss narrowed to $7.6 million
- Adjusted EBITDA1 increased to $218.0 million
- Adjusted EBITDA Margin1 expanded to 16.0%

Irving, TX - GLOBE NEWSWIRE - March 29, 2017 -- Forterra, Inc. ("Forterra" or "the

Company") (NASDAQ: FRTA), a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada, today announced results for 2016 and the quarter ended December 31, 2016.

Forterra CEO Jeff Bradley commented, "We are pleased with the significant accomplishments we made in 2016 that laid the foundation for further growth and margin expansion. Accretive acquisitions expanded our geographic scope, increased our market share in key growth regions, enhanced the breadth of our product offerings, added an innovative and fast-growing stormwater treatment product line and enhanced our position as a market leader in water and drainage infrastructure pipe and products. The early results of our initiatives to drive margin expansion and lower costs are reflected in our results for the year."

Bradley continued, "Forterra is better positioned today to benefit from a favorable outlook across all three of our end markets than any time in the past. Our focus in 2017 is to execute on multiple initiatives that we expect to drive top-line growth, expand our margins and lower our costs."

54.     On March 30, 2017, the Company held its fourth quarter 2016 conference call.  On the call, Defendant Bradley discussed "key top-line organic growth initiatives" that the Company purportedly put in place in 2016.  The initiatives included the creation of a "strategic accounts team that focuses on developing and expanding [Forterra's] relationships with large national engineering procurement and construction firms," a "cross-selling initiative that is focused on expanding the sales of [the Company's] drainage pipe and products to distributors in areas of the country where [Forterra] did not have a strong presence," and significantly growing Forterra's Bio Clean business.  In greater part, Defendant Bradley stated:

Next, I want to highlight a few of the key top-line organic growth initiatives that we put in place in 2016 on slide six. We created strategic accounts team that focuses on developing and expanding our relationships with large national engineering procurement and construction firms. We're already seeing the bad debts.

We are tracking a number of multi-billion dollar industrial projects to be built in the petrochemical, power generation, and oil and gas industries that could generate tens of millions of dollars in revenue over the next few years. As I mentioned, we also launched the cross-selling initiative that is focused on expanding the sales of our drainage pipe and products to distributors in areas of the country where we did not have a strong presence. We expect the cross-selling will generate meaningful net sales this year.

Our third organic growth initiative is to significantly grow our Bio Clean business. We have a growth plan in place, and we expect it will generate significant increases in earnings from these products over the next five years.

Also want to highlight the benefits from our focus on synergy, realization and cost reduction initiatives, we realized over $30 million of cost savings and over $6 million in synergies last year. We believe this is just initial results of our cost savings efforts. In January this year, we hired Scott Leonard as our Chief Operating Officer, who will be spearheading a new range of cost reduction initiatives including procurement and lower SG&A.

55.     The statements referenced in ¶¶42-54 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) at the time of the IPO, organic sales in Forterra's Drainage and Water segments had significantly declined; (ii) the Company was experiencing increased pricing pressure due to competition and continued softness in its concrete and steel pipe business; (iii) Forterra had been losing business in its important pipe and precast business due in large part to operational problems at its production plants; (iv) the Company had undisclosed material weaknesses in its internal controls that prevented it from accurately reporting and forecasting its financial results; and (v) as a result of the foregoing, Forterra's public statements were materially false and misleading at all relevant times.

### C.     The Truth Is Revealed

56.     The IPO was successful for the Company, who sold 18.42 million shares of Forterra common stock to the public at $18 per share, raising $331.56 million in gross proceeds ($313.3 million net of underwriting discounts, commissions and offering costs).

57.     On May 15, 2017, pre-market, Forterra reported net sales of $338.3 million for

16

the first quarter of 2017, compared to $187 million in the prior year quarter.  Sales growth was solely "attributable to the impact of acquisitions that increased net sales by $163 million" rather than to organic growth.  In addition, Forterra reported a consolidated net loss of $22.5 million, or $0.35 loss per share.  Forterra's Chief Executive Officer commented that the Company's "earnings results for the quarter were impacted by a number of factors that unfortunately will persist through the second quarter of 2017."

58.     On this news, Forterra's share price fell $4.79, or 24.29%, to close at $14.93 on May 15, 2017.

59.     On August 10, 2017, the Company once again issued a press release disclosing that it produced no organic growth, this time for the second quarter of 2017.  Specifically, the Company stated that net sales for the quarter increased to $436.7 million, compared to $381.7 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that contributed $56.1 million to net sales.  The Company claimed that net sales were negatively impacted by Tropical Storm Cindy, excessive rainfall events around the country, unanticipated competitive pricing pressure in certain areas, and a decline in average sales prices of products sold.

60.     Forterra also disclosed that it was taking two asset impairment charges.  First, the Company recorded a $7.5 million pre-tax impairment charge in its U.S. concrete and steel pressure pipe assets.  Second, the Company recorded a $3 million goodwill impairment charge in its Canadian concrete and steel pressure pipe reporting unit.

61.     On this news, the Company's stock price fell approximately 57%, on August 10, 2017, on unusually heavy volume.

## V.   CLASS ACTION ALLEGATIONS

62.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class that: (a) acquired Forterra common stock issued pursuant and/or traceable to the Company's false and/or misleading IPO Registration Statement issued in connection with Forterra's IPO; and (b) acquired Forterra securities during the Class Period.  Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Forterra and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

63.   The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Forterra's securities were actively traded on the NASDAQ, an open and efficient market, under the symbol "FRTA."  Millions of Forterra shares were traded publicly during the Class Period on the NASDAQ.  As of August 8, 2017, Forterra had approximately 64.2 million shares of common stock outstanding.  Record owners and the other members of the Class may be identified from records maintained by Forterra and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

64.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

65.     Plaintiff will fairly and adequately protect the interests of the other members of the Class, and has retained counsel competent and experienced in class and securities litigation.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

   a) whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

   b) whether Defendants participated in and pursued the common course of conduct complained of herein;

   c) whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of Forterra;

   d) whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Forterra;

   e) whether the market price of Forterra common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.     UNDISCLOSED ADVERSE FACTS

68.     The market for Forterra's securities was an open, well-developed and efficient market at all relevant times.  As a result of these materially false and misleading statements and failures to disclose described herein, Forterra's securities traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased or otherwise acquired Forterra's securities relying upon the integrity of the market price of the Company's securities and market information relating to Forterra, and have been damaged thereby.

69.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Forterra's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business, accounting, financial operations and prospects, as alleged herein.

70.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Forterra's financial well-being and prospects.

71.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.  LOSS CAUSATION

72.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Forterra's securities and operated as a fraud or deceit on Class Period purchasers of Forterra's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Forterra's securities fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of Forterra's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

73.     By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status.  Therefore,

Defendants presented a misleading picture of Forterra's business practices and procedures. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Forterra to conceal the truth.

74.     Defendants' false and misleading statements had the intended effect and caused Forterra's common stock to trade at artificially inflated levels throughout the Class Period. The stock price drops discussed herein caused real economic loss to investors who purchased the Company's securities during the Class Period.

75.     The decline in the price of Forterra's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Forterra's common stock price declines negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Forterra's securities and the subsequent decline in the value of Forterra's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## VIII.  SCIENTER ALLEGATIONS

76.     As alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

77.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Forterra, their control over, receipt and/or modification of Forterra's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Forterra, participated in the fraudulent scheme alleged herein.

## IX.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

78.     At all relevant times, the market for Forterra's securities was an efficient market for the following reasons, among others:

a)      Forterra securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

b)      As a regulated issuer, Forterra filed periodic public reports with the SEC and the NASDAQ;

c)      Forterra securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d)      Forterra regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

79.     As a result of the foregoing, the market for Forterra's securities promptly digested current information regarding Forterra from all publicly available sources and reflected such information in Forterra's stock price. Under these circumstances, all purchasers of Forterra's

securities during the Class Period suffered similar injury through their purchase of Forterra's securities at artificially inflated prices and a presumption of reliance applies.

80.     A Class-wide presumption of reliance is also appropriate in this action under the U.S. Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiff's fraud claims are grounded in Defendants' omissions of material fact of which there is a duty to disclose. As this action involves Defendants' failure to disclose material adverse information regarding Forterra's business practices, financial results and condition, and the Company's internal controls—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered such information important in the making of investment decisions.

## X.     NO SAFE HARBOR

81.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

82.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false

forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Forterra who knew that the statement was false when made.

## XI.     COUNTS AGAINST DEFENDANTS

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

83.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all Defendants.

84.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Forterra securities; and (iii) cause Plaintiff and the other members of the Class to purchase Forterra securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

85.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Forterra securities in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Defendants are sued as primary

participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Forterra, as alleged herein.

86.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-X (17 C.F.R. § 210.01, *et seq*.) and S-K (17 C.F.R. § 229.10, *et seq*.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

87.     Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Forterra as specified herein. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Forterra's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about Forterra and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein,

and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Forterra's securities during the Class Period.

88.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

89.    These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Forterra's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and

omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

90.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Forterra securities was artificially inflated during the Class Period.  In ignorance of the fact that the market price of Forterra shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Forterra securities during the Class Period at artificially inflated high prices and were damaged thereby.

91.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Forterra, which were not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Forterra securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

92.     By virtue of the foregoing, Forterra and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

93.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**Against The Individual Defendants**

94.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

95.     The Individual Defendants were and acted as controlling persons of Forterra within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

96.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

97.     As set forth above, Forterra and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their

controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**COUNT III**
**For Violation of § 11 of the Securities Act**
**Against All Defendants**

98.     Plaintiff incorporates the allegations contained above pertaining to the false Registration Statement except that Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as these counts are based solely on claims of strict liability and/or negligence under the Securities Act.

99.     This Count is brought against Defendants on behalf of all persons or entities who purchased Forterra stock issued pursuant or traceable to the IPO.  The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed adequately to disclose material facts, as described above.

100.     Under the Securities Act, Defendants are strictly liable for the misstatements and omissions and for the damages that Plaintiff and other members of the Class have sustained thereby.  Defendants are responsible for the contents and dissemination of the Registration Statement, and did not conduct a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

101.     Defendants issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in

the Registration Statement, which misrepresented or failed to disclose, among other things, the facts set forth above.  By reasons of the conduct herein alleged, Defendants either violated or were a controlled a person who violated, Section 11 of the Securities Act

<u>**COUNT IV**</u>
**For Violation of §15 of the Securities Act**
**Against the Individual Defendants**

102.    Plaintiff incorporates the allegations contained above pertaining to the false Registration Statement, except that Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as these counts are based solely on claims of strict liability and/or negligence under the Securities Act.  This Count is brought against the Individual Defendants.

103.    This Claim is brought against the Individual Defendants pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of all persons or entities who purchased Forterra stock issued pursuant or traceable to the IPO.

104.    The Company is liable under Section 11 of the Securities Act as set forth in Count III herein with respect to the IPO.

105.    Each of the Individual Defendants was a control person of the Company with respect to the IPO by virtue of that individual's position as a senior executive officer and/or director of the Company.  These Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Forterra.  By reason of their positions within the Company and/or their stock ownership and/or because of their positions on Forterra's Board of Directors, the Individual Defendants had the requisite power to directly or indirectly control or influence the specific corporate policies that resulted in the unlawful acts and conduct alleged in Count III.

106.    Each of the Individual Defendants was a culpable participant in the violations of Section 11 of the Securities Act alleged in Count III above, based on them having signed the Registration Statement and/or having otherwise participated in the process that allowed the IPO to be successfully completed.  These Defendants, by virtue of their managerial and/or board positions with the Company, controlled the Company as well as the contents of the Registration Statement at the time of the IPO.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and had the ability to either prevent their issuance or cause them to be corrected.

107.    As a result, the Individual Defendants are liable under Section 15 of the Securities Act for the Company's primary violation of Section 11 of the Securities Act.

108.    By virtue of the foregoing, Plaintiff and other members of the Class who purchased or otherwise acquired the Company's common stock pursuant and/or traceable to the IPO are entitled to damages against the Individual Defendants.

## XII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a)    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)    Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c)    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)      Awarding such other relief as this Court deems appropriate.

## XIII.  <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

DATED: September 27, 2017                     Respectfully Submitted,

*/s/ Curtis V. Trinko* __
Curtis V. Trinko (CT-1838)
**LAW OFFICES OF CURTIS V. TRINKO, LLP**
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158
Email: Ctrinko@trinko.com

*Liaison Counsel for Plaintiff Nancy G. Maloney*

**SAXENA WHITE P.A.**
Steven B. Singer (SS-5212)
4 West Red Oak Lane, Suite 312
White Plains, New York 10604
Telephone: (914) 437-8551
Facsimile:  (888) 631-3611
ssinger@saxenawhite.com

-and-

Maya Saxena
Joseph E. White, III
Lester R. Hooker
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Plaintiff Nancy G. Maloney*

33

## CERTIFICATION AND AUTHORIZATION

I, Nancy Maloney ("Plaintiff"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the Complaint and authorize its filing.

2. I did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in Forterra, Inc. common stock are set forth as follows:

| Trade Date | Transaction | Shares | Price |
|------------|-------------|--------|-------|
| 10/20/16 | Purchase | 1,000 | $16.61 |
| 11/14/16 | Sold | 1,000 | $18.92 |
| 02/17/17 | Purchase | 1,000 | $18.75 |

5. I have complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as set forth below: *None*

7. I will not accept any payment for serving as a representative party on behalf of the Class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 26 day of September 2017.

NANCY MALONEY